IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DARNELL HENSON, SR.,**   CASE NO. 3:24 CV 2089

    Plaintiff,

    v.   JUDGE JAMES R. KNEPP II

**LUCAS COUNTY SHERIFF'S OFFICE, et al.,**

    Defendants.   MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Currently pending in this civil rights action brought pursuant to 42 U.S.C. § 1983 are Motions to Dismiss brought by Defendant Lucas County Sheriff's Office (Doc. 13) and Defendants Lucas County Deputy Sheriffs Hunter Baum, Nicholas Danielski, Steven McClellan, and Joseph Navarre ("Individual Deputies") (Doc. 16). Plaintiff opposes (Doc. 22), and Defendants filed a combined reply (Doc. 23). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendant Lucas County Sheriff's Office's Motion (Doc. 13), and grants in part and denies in part the individual Deputies' Motion (Doc. 16).

## BACKGROUND

In his original Complaint,[1] Plaintiff alleged the following:

On September 03, 2023 around 2 p.m. I, Darnell L. Henson, Sr. was racial[ly] profiled by the Lucas County Sheriffs [D]epartment deputies. They violated my 4th and 14th amendment rights. Held me against my will. Prolonged the traffic stop to involve the Toledo police K-9 unit in an[] "unlawful" search and seizure

---

1. Defendants' motions address the allegations in both Plaintiff's original Complaint and Amended Complaint combined; the Court does so also.

> of me and my property. They must be held accountable for their actions on that day. "Abuse of Power." Hunter Baum stated to me that he had to fin[]d a reason to pull me over which created "False" citations in the court. I never committed a crime.

(Doc. 1, at 8).

To his Complaint, Plaintiff attached photographs (*id.* at 11-14), as well as citations and court documents related to the traffic stop (*id.* at 15-25). The citations were issued on September 3, 2023, by Baum, and indicate a marked lane violation (Ohio Revised Code § 4811.33) and a cracked front windshield. *Id.* at 16-17. The citation states Plaintiff told Baum "that he has plans to fix the window" and the "[c]harge can be dropped if fixes window." *Id.* at 16. To the citation is attached a "Citation Statement of Fact" wherein Baum stated: "The vehicle was observed driving with a cracked front windshield." *Id.* at 17. Baum did not appear at the court proceeding and the case was dismissed without prejudice. *Id.* at 19-25.

Plaintiff also attached to his Complaint a letter entitled: "Final Demand Letter of a Section 1983 Claim." *Id.* at 27 (capitalization altered). Therein, he described in greater detail the events leading up to the at-issue traffic stop as follows. Plaintiff and his passenger (Angela Walker)[2] were driving on Crissey Road near Angola, passing a parked Lucas County Deputy Sheriff (Baum). They turned onto Old State Line Road and then made a right turn onto Irwin Road. As they were approaching the Angola and Irwin intersection, Plaintiff observed a Deputy Sheriff (Danielski) with his left turn signal on. Both Plaintiff and the Deputy Sheriff crossed the intersection, but then the Deputy made a U-turn and was "quickly approaching [Plaintiff's] vehicle." *Id.* Plaintiff and his passenger were worried because they are scared of the police. *Id.*

---

2. The passenger in the vehicle also filed her own cases relative to the same traffic stop, each of which was also removed to this Court. *See Walker v. Danielski, et al.*, No. 24 CV 2091 (N.D. Ohio); *Walker v. Comes, et al.*, No. 25 CV 35 (N.D. Ohio); *Walker v. Lucas Cnty. Sheriff's Dep't*, No. 24 CV 36 (N.D. Ohio).

Plaintiff continued driving, making his way back to the Crissey Road intersection where they saw Baum still parked, while Danielski "still followed behind" him. *Id.* As he approached the stop sign, Baum "jumped in front of" Danielski and pulled Plaintiff over. *Id.* Baum asked Plaintiff if the vehicle was registered in his name, and for his driver's license. *Id.* Baum also said "I see you have a cracked windshield, I could give you a ticket for that too." *Id.* Baum asked Plaintiff permission to search his vehicle and Plaintiff denied consent. *Id.* Danielski questioned Walker. *Id.* Plaintiff asked Baum if this was a routine traffic stop and why he could not simply be issued a citation and let go. *Id.* Plaintiff asserts he and his passenger were "held against [their] will, kidnap[ed] [] for approximately a half [an] hour." *Id.* He contends there were Deputies "everywhere" and "they prolonged the traffic stop." *Id.* A Toledo Police Officer (Sgt. Don Comes) and his police canine arrived; Comes walked the dog around Plaintiff's vehicle. *Id.* Comes stated that "the dog hit on something." *Id.* At this point, Lucas County Deputy Sheriffs "searched [Plaintiff], [his] wallet, Angla Walker's purse, and [Plaintiff's] vehicle." *Id.* Plaintiff states that the search did not reveal anything and violated his Fourth and Fourteenth Amendment rights. *Id.* at 27-28.

In other demand letters attached to the Complaint, Plaintiff asserts Danielski's actions were racial profiling (*id.* at 45) and that Navarre and McClellan "assisted" Baum and Danielski "with the unlawful search and seizure of [Plaintiff] and [his] property" (*id.* at 47, 48).

Plaintiff asserts he suffered resulting damages in the form of a PTSD diagnosis and emotional distress. *Id.* at 28. He attached medical records. *Id.* at 32-42.

In his Amended Complaint, Plaintiff alleges that on September 3, 2023, Deputy Sheriff Hunter Baum issued him two citations – one for a marked lane violation. (Doc. 11, at 1). He asserts that he told Baum he did not commit such a violation, and repeats that Baum told him he

3

"had to find a reason to pull [Plaintiff] over." *Id.* He reiterates that Danielski made the U-turn at Angola and Irwin, "racial profiling" him. *Id.* Plaintiff again states these deputies then "involved" Navarre and McClellan and that he declined a request to search his vehicle. *Id.* He contends the traffic stop was prolonged to involve Comes to "perform an unconstitutional search of [Plaintiff] and [his] property", citing *Rodriguez v. United States*. He contends he was held against his will "for approximately 45 minutes" after he refused consent to search. (Doc. 12).

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. In scrutinizing the Complaint, this Court accepts the allegations stated within as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the Complaint in a light most favorable to Plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although the Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Additionally, this Court recognizes that *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *See El Bey v. Roop*, 530 F.3d 407, 413 (6th

Cir. 2008). However, the "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Liberal construction for *pro se* litigants does not "abrogate basic pleading essentials". *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008); *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (district courts "have no obligation to act as counsel or paralegal to *pro se* litigants"); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (district courts are not "required to create" a *pro se* litigant's claim for her). Rather, the complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). The complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

<u>Lucas County Sheriff's Office</u>

The Lucas County Sheriff's Office moves to dismiss the claims against it arguing: (1) the Lucas County Sheriff's Office lacks capacity to be sued under 42 U.S.C. § 1983; and (2) alternatively, Plaintiff has failed to allege plausible claims against the Lucas County Sheriff's Office. (Doc. 13). In his opposition, Plaintiff argues the facts underlying his claim, but does not directly respond to the Sherriff's Office's legal arguments. (Doc. 22). For the reasons set forth below, the Court finds the Sheriff's Office is entitled to dismissal.

The Lucas County Sheriff's Office is not *sui juris*, meaning it lacks capacity to be sued. *Petty v. Cnty. of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007) ("[U]nder Ohio law, a county

sheriff's office is not a legal entity capable of being sued for purposes of § 1983."), *overruled on other grounds by Twombly*, 550 U.S. at 561-62.

Even assuming the Sheriff's Office were capable of being sued, or liberally construing Plaintiff's Complaints to name the correct governmental entity, dismissal remains proper. Under § 1983, local governments are not liable simply because they employ someone who commits a constitutional violation—that is, they cannot be held liable under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights.").

Plaintiff's Complaints contain no suggestion of a custom or policy of Lucas County which deprived him of a federally protected right. For these reasons, the Lucas County Sheriff's Office is entitled to dismissal of the claims against it.

Lucas County Deputy Sheriffs

The individual Lucas County Deputy Sheriffs (Baum, Danielski, McClellan, and Navarre) also move for dismissal, alleging they are entitled to qualified immunity. (Doc. 16). Specifically, they assert (1) the factual allegations demonstrate that there was probable cause for the stop; (2) the use of the drug-sniffing dog in and of itself is not a search and therefore not a constitutional violation; (3) the documents accompanying the Complaint demonstrate the reasonable suspicion for the extension of the traffic stop; and (4) the Complaint does not allege

specific allegations of misconduct against Danielski, McClellan, or Navarre. (Doc. 18). For the reasons set forth below, the Court finds Plaintiff's claims that officers lacked probable cause for the traffic stop and unreasonably prolonged the traffic stop may proceed as against Baum and Danielski, but all other claims against the individual Defendants are dismissed.

To state a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). To do so, "a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or 'implicitly authorized, approved[,] or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Scott v. City of Cleveland*, 555 F. Supp. 2d 890, 896 (N.D. Ohio 2008)); *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution") (emphasis added). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged

violation of rights); *Griffin v. Montgomery*, 2000 WL 1800569, at *2 (6th Cir.) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 1990 WL 82722, at *1 (6th Cir.) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

The defense of qualified immunity shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss". *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). When a defendant raises qualified immunity, the burden shifts to the plaintiff to show "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he was doing violated that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (citation modified).

The Fourth Amendment's protection against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment, protects individuals from: (1) traffic stops when the officer lacks probable cause to believe that a civil infraction occurred or reasonable suspicion that a crime is being committed; and (2) arrests or detentions without probable cause. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) ("[A] vehicle stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment.") (citation modified). In the traffic stop context, the probable cause determination "is fact-dependent and

8

will turn on what the officer knew *at the time he made the stop*." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

"Generally, a dog sniff does not require separate reasonable suspicion because it is not a search under the Fourth Amendment. If a dog sniff is conducted while someone is otherwise properly seized, such as in a lawful traffic stop, the dog sniff may render an otherwise lawful seizure unlawful only if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop." *United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012) (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). In *Rodriguez v. United States* (the case upon which Plaintiff relies), the Supreme Court held that officers may not prolong a traffic stop to have a drug dog sniff a car—a crime detecting action not ordinarily incident to a traffic stop—absent independent reasonable suspicion to detain the motorist. 575 U.S. 348, 354-57 (2015). Finally, "[a]n alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012); *Nykoriak v. Wileczek*, 666 F. App'x 441, 445 (6th Cir. 2016) ("[T]he positive indication by the canine was sufficient to establish probable cause for the presence of a controlled substance to justify the warrantless search of [the] vehicle.") (internal quotations and citations omitted).

**Baum**

As noted above, in the context of a traffic stop, the probable cause determination turns on "what the officer knew *at the time he made the stop*." *Ferguson*, 8 F.3d at 391. Plaintiff's Amended Complaint alleges Baum told Henson he was pulled over for a marked lane violation, but Henson denied committing such a violation. (Doc. 11, at 1). The Individual Deputy Defendants rely on the fact that Henson was also cited for driving with a cracked windshield and

9

that he acknowledged the violation, contending this provides a constitutional basis for the stop. *See* Doc. 16, at 11. The fact that Henson was cited is accurate. However, it does not show that Baum knew about the cracked windshield prior to making the stop. That is, the Complaint at least plausibly alleges that Baum lacked probable cause to pull the car over. This claim may proceed to discovery.

The Court also finds at this juncture that Plaintiff has plausibly alleged Baum unreasonably prolonged the stop to bring in the Toledo Police Officer (Comes) and the canine. The Complaint alleges Baum pulled Plaintiff over, and after Plaintiff denied consent to search and asked to be issued a citation and released, Baum "held [Plaintiff] against [his] will, kidnapping [him] for approximately half [an] hour." (Doc. 1, at 27); *see also* Doc. 12, at 1 (stating he was held against his will "[f]or approximately 45 minutes [a]fter [he] refused to let them search [his] vehicle.").

Although the Individual Deputy Defendants argue "the facts—i.e., the reasonable suspicion for—justifying that extension [of the traffic stop] are contained in the exhibits now before the Court" (Doc. 16, at 12), the Court finds the material Defendants reference not appropriate for consideration at this stage. Defendants ask the Court to consider exhibits attached to their answer, including a statement from an Internal Affairs Bureau response to a complaint that states: "After the stop[,] Mr. He[n]son's driving pattern, criminal history and acting suspicious were reasons given for calling the Toledo Police K9 unit." (Doc. 1, at 25). But Defendants' argument asks the Court to take this statement as established fact. Defendants contend the Court can consider these documents because they are attached to the pleadings and matters of public record. The Court cannot ordinarily consider evidence outside the pleadings in ruling on a 12(b)(6) motion. *Weiner v. Knight*, 108 F.3d 86, 88 (6th Cir. 1997). A court may,

10

however, consider exhibits attached to the complaint, public records, and exhibits attached to the motion to dismiss if they are referred to in the complaint and central to the plaintiff's claims. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011). "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

Because Plaintiff could reasonably question the accuracy of the contents of the Internal Bureau Affairs complaint response, and because it is not central to Plaintiff's complaint, the Court finds consideration of such documents better suited for a summary judgment motion. *Cf., e.g.*, *Linden v. City of Lansing*, 2013 WL 6858459, at *3 (W.D. Mich.) ("Most courts that have considered the issue have determined that police reports may not be considered as public records") (citing *Blackwell v. Kalinowski*, 2009 WL 1702992, at *2 (N.D. Ill.) ("[T]he factual allegations contained in the police report do not become matters of public record suitable for consideration on a motion to dismiss.")).

Whether a dog sniff unreasonably prolonged a traffic stop "is the type of circumstance-specific Fourth Amendment inquiry that, in the civil context, is generally reserved to the jury[.]" *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020); *see also United States v. Baxter*, 2018 WL 1598950, at *6 (E.D. Tenn.) ("To evaluate the reasonableness of a stop, a court considers the diligence of the officer. A court must conduct a fact-bound, context-dependent inquiry in each case to determine whether the totality of the circumstances surrounding the stop indicates that the duration of the stop as a whole . . . was reasonable." (quotation marks and citations omitted)), *report and recommendation adopted*, 2018 WL 1594778; *Davila v. N. Reg'l Joint Police Bd.*, 2016 WL 1252986, at *3 (W.D. Pa.) ("While it may indeed turn out, with the benefit of

11

discovery, that [the officer] had probable cause or at least a reasonable basis to suspect [plaintiff] had violated some law other than that requiring her headlights to be on, the Court concludes that at this juncture, it is just too soon to tell as a factual matter.").

Here, Plaintiff has alleged sufficient facts in his complaint to proceed to discovery regarding what information Baum knew and/or acted upon. Discovery will also reveal whether, as the County Defendants assert, Baum had reasonable suspicion to extend the traffic stop, if it was so extended. The Court therefore finds Plaintiff's claim that Baum unreasonably prolonged the traffic stop may proceed.

By contrast, the Court finds Plaintiff has not plausibly alleged that the search of the car itself violated his rights. As the County Defendants correctly contend, a drug dog's alert establishes probable cause for a search. *See Sharp*, 689 F.3d at 618; *Nykoriak*, 666 F. App'x at 445. Plaintiff provides no argument in opposition, and repeats that "[t]he dog alerted there were drugs in my vehicle." (Doc. 22, at 2). Although Plaintiff's Complaints plausibly assert the dog alerted incorrectly (because no drugs were ultimately found in the car), his Complaint contains no allegations from which the Court could conclude the dog in fact did not alert. Thus, under the facts as asserted in the Complaint, officers had probable cause for the search.

**Danielski**

As to Danielski, Plaintiff's Complaint identifies him as the officer who followed the car just before the traffic stop and describes how he questioned Walker while Baum questioned Plaintiff. (Doc. 1, at 27). Plaintiff further asserts that during this questioning, after asking to be cited and released, "[t]hey didn't, they held us against our will, kidnapping us for approximately a half [an] hour." *Id.*

Although a close call, the Court finds that the Complaint plausibly alleges Danielski's personal involvement in both the traffic stop and the subsequent decision to call in the Toledo Police Department officer and canine. *See, e.g.*, *Webb*, 789 F.3d at 659 (stating that to allege personal involvement, "a plaintiff must allege the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved[,] or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate."). Plaintiff's claims against Danielski may proceed.

### Navarre/McClellan

As to Navarre and McClellan, the Complaint simply alleges that Baum and Danielski "involved" them and that an "unlawful and unconstitutional search of [him] and [his] property" violated his rights. (Doc. 11, at 1); *see also* Doc. 12, at 1 ("Steven McClelan and Joseph Navarre [a]ssisted them with an unlawful and unconstitutional search of [him] and [his] property."). He further alleges all of the officers violated their oath of office and department policies, but provides no additional detail. (Doc. 12, at 1). There are no other specific factual allegations as to either of these Defendants.

The pleading standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* The Court finds Plaintiff has not plausibly pled a § 1983 claim against either Navarre or McClellan and they are entitled to dismissal. *Id.* at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Frazier*, 41 F. App'x at 764 (dismissing plaintiff's claims where the complaint

13

did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

In sum, the Court finds that Plaintiff has plausibly alleged claims against Danielski and Baum, but his claims against Navarre, McClellan, and the Lucas County Sheriff's Department must be dismissed.

Remaining Defendant

Plaintiff's Amended Complaint also asserts claims against Toledo Police Sergeant Don Comes. *See* Doc. 11. Plaintiff attempted to serve Comes by certified mail. *See* Doc. 25. Plaintiff filed a return of service, attaching the certified mail return "green card". *See id.* The green card is, however, unsigned. *See id.* at 3.

Federal Rule of Civil Procedure 4(e)(1) authorizes service of process in accordance with applicable law. Ohio law authorizes service of process by certified mail. Ohio Civ. R. 4.1(A)(1)(a). Ohio Civil Rule 4.1(A)(1)(a) specifically explains that service of process by certified mail is "[e]videnced by return receipt signed by any person[.]" Notably, "[a] signed return receipt raises a presumption of proper service, which can be rebutted with evidence that service never occurred." *Breezley v. Hamilton Cnty.*, 2017 WL 36148, at *3 (6th Cir.) (citing *Ohio Civ. Rights Comm'n. v. First Am. Props., Inc.*, 113 Ohio App. 3d 233 (1996); *TCC Mgmt., Inc. v. Clapp*, 2005 WL 2008677, at *34 (Ohio Ct. App.)); *see also Brownfield v. Krupman*, 2015 WL 2452048, at *4 (Ohio Ct. App.) ("When service is attempted by certified mail, a signed receipt returned to the sender establishes a prima facie case of delivery to the addressee." (quoting *Clapp*, 2005 WL 2008677, at *2)). Where "there is no signed return receipt in the record, valid service cannot be presumed." *Brownfield*, 2015 WL 2452048, at *5.

Federal Rule of Civil Procedure 4(m) provides:

14

**(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Plaintiff filed his Amended Complaint in this case on February 7, 2025. (Doc. 11). Nothing in the record presently before the Court establishes a presumption or prima facie case of service of process by certified mail on Comes. Instead, the record reflects only an unsigned return receipt. Pursuant to Federal Civil Rule 4(m), Plaintiff had until May 8, 2025, to serve Comes. Because, however, it appears Plaintiff attempted to serve Comes in accordance with state law as permitted by Federal Civil Rule 4(e), but the card was returned without a signature, the Court will *sua sponte* find good cause for Plaintiff's failure to timely serve Comes and grants him an additional thirty (30) days from the date of this order to complete service. If Plaintiff fails to do so, his claims against Comes will be dismissed for lack of service pursuant to Rule 4(m).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant Lucas County Sheriff's Office's Motion to Dismiss (Doc. 13) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendants Lucas County Deputy Sheriffs Hunter Baum, Nicholas Danielski, Steven McClellan, and Joseph Navarre's Motion to Dismiss (Doc. 16) be and the same hereby is, GRANTED IN PART and DENIED in part. Specifically, Plaintiff's Fourth and Fourteenth Amendment claims against Baum and Danielski regarding the lack of probable cause and prolonging of the traffic stop may proceed; all other claims asserted against the Individual County Defendants are dismissed; and it is

FURTHER ORDERED that Plaintiff is *sua sponte* GRANTED an additional thirty (30) days from the date of this Order in which to serve Defendant Don Comes.

     s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2025