**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DARNELL HENSON, SR.,**

Plaintiff,

v.

**HUNTER BAUM, et al.,**

Defendants.

CASE NO. 3:24 CV 2089

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION AND BACKGROUND

This case arises out of a September 3, 2023, traffic stop of Plaintiff Darnell Henson, Sr., and his passenger, Angela Walker, by Lucas County Deputies. *See* Docs. 1, 11.[1] Remaining in the case are Plaintiff's allegations that Defendants lacked probable cause for the traffic stop and unreasonably prolonged the traffic stop to bring a drug dog to sniff the car. *See* Docs. 26, 32 (dismissing other claims).

Currently pending before the Court is Defendants Lucas County Deputy Sheriffs Hunter Baum and Nicholas Danielski's Motion for Summary Judgment. (Doc. 45). *Pro se* Plaintiff Darnell Henson, Sr., opposes (Docs. 48, 49), and Defendants reply (Doc. 50). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, Defendants' Motion is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When

---

1. Walker brings a separate but related case arising out of the same stop. *See Walker v. Danielski*, No. 24 CV 2091 (N.D. Ohio).

considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257; *see also* Fed. R. Civ. P. 56(c)(1). Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials.").

## Discussion

Defendants assert they are entitled to qualified immunity and summary judgment on the two remaining claims in this case: (1) whether they had probable cause/reasonable suspicion for the original traffic stop; and (2) whether they unreasonably prolonged that stop. *See* Doc. 45. In response, Plaintiff filed a Rule 56(d) Motion (Doc. 48) and an opposition (Doc. 49) contending issues of fact preclude summary judgment. Defendants replied. (Doc. 50). For the reasons set forth below, the Court finds Defendants are entitled to summary judgment.

<u>Rule 56(d) Motion</u>

In his first opposition brief, Plaintiff references Federal Civil Rule 56(d). He contends discovery is "still ongoing and incomplete." (Doc. 48, at 1).

Federal Civil Rule 56(d) provides:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

The affidavit or declaration must "indicate to the district court [the movant's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)); *see also Pro-Two, Inc. v. Southlake Specialty Ins.*, 2026 WL 2727889, at *3 (S.D. Ohio) ("Accordingly, a Rule 56(d) motion must do more than assert that discovery is needed; it must identify the facts it hopes to uncover that would support its opposition to summary judgment."). "Bare allegations or vague assertions of the need for discovery are not enough" and the movant "must state with 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (quoting *Simmons Oil Corp. v. Tesoro Petrol. Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)).

The determination on a Rule 56(d) motion is within the district court's discretion. *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Prac. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014). Courts consider five factors: (1) when the movant learned of the issue that is the subject of the desired discovery; (2) whether the discovery would change the outcome; (3)

how long the discovery period lasted; (4) whether the movant was dilatory in discovery efforts; and (5) whether the opposing party was responsive to discovery requests. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995)) (the "*Plott* factors"). But the "main inquiry is 'whether the moving party was diligent in pursuing discovery.'" *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019) (quoting *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014)).

Plaintiff contends "Defendants should not be permitted to seek judgment in their favor while simultaneously withholding evidence." (Doc. 48, at 2). He cites "[e]vasive and inadequate responses" to his discovery requests and the absence of audio and video recordings (including body camera footage) provided in discovery. *Id.* But over a month prior to this filing, the Court held a discovery dispute phone conference and found Plaintiff's "claimed deficiencies and defects in Defendants' discovery responses are not well-taken." (Non-document entry dated February 6, 2026). Plaintiff subsequently filed a similar motion to compel, which the Court denied for the same reasons. *See* Docs. 40, 47.[2] Moreover, Defendants' sworn discovery responses from December 2025 indicate that no dash camera or body camera footage is available from the traffic stop. *See* Doc. 45-2, at 7, 13.[3]

The Court finds Plaintiff has not established Defendants are "withholding evidence," and it has previously ruled that Defendants' discovery responses are not "inadequate." And Plaintiff

2. The Court's Order on the Motion to Compel was filed after Defendants filed their Motion for Summary Judgment, but before Plaintiff filed his opposition brief thereto.
3. Defendants' responses indicate such footage is automatically deleted after 90 days pursuant to policy unless it is flagged by an officer due to an arrest, exigent circumstances, or if an individual files a complaint with the Internal Affairs Division of the Lucas County Sheriff. (Doc. 45-2, at 7, 13). Here, although Walker filed such a complaint, the only evidence before the Court indicates she did so after the 90-day period had expired. *See* Doc. 1, at 25.

has not otherwise demonstrated "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d).

§ 1983 / Qualified Immunity

Plaintiff alleges Defendants violated his Fourth and Fourteenth Amendment rights in conducting the traffic stop on September 3, 2023, and then prolonging that stop to bring a drug-sniffing dog.

To state a claim under 42 U.S.C. § 1983, a plaintiff must identify the violation of a right secured by the federal Constitution or laws and must show the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

Qualified immunity "spares officers from 'the time, expense and risk of money-damages actions' unless they violate clearly established constitutional rights.'" *Moore v. Oakland Cnty.*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quoting *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012)). Unlike other affirmative defenses, a plaintiff bears the burden of overcoming qualified immunity once a defendant raises it. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). To do so, a plaintiff must demonstrate: (1) the officers violated the plaintiff's constitutional right; and (2) the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court retains discretion to address each element in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons set forth below, the Court finds Plaintiff has not demonstrated a dispute of fact regarding whether Defendants violated his constitutional rights.

*Initial Traffic Stop*

Defendants first contend they are entitled to qualified immunity and summary judgment on Plaintiff's claim that the traffic stop violated his constitutional rights because the undisputed record demonstrates there was probable cause for the traffic stop. The Court agrees.

The Fourth Amendment's protection against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment, protects individuals from traffic stops when the officer lacks probable cause to believe that a civil infraction occurred or reasonable suspicion that a crime is being committed. *See United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) ("It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime."). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Blair*, 524 F.3d at 748.

In the traffic stop context, the probable cause determination "is fact-dependent and will turn on what the officer knew *at the time he made the stop*." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *Id.* And the Fourth Amendment "allows 'police officers to stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop.'" *United States v. Warfield*, 727 F. App'x 182, 188 (6th Cir. 2018) (quoting *United States v. Mes*a, 62 F.3d 159, 162 (6th Cir. 1995)).

Ohio law provides "[n]o person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person." Ohio Rev. Code § 4513.02(A).

Here, the undisputed factual record demonstrates Plaintiff's vehicle had a cracked windshield at the time of the stop and Baum issued Plaintiff a citation for driving an unsafe vehicle under the above-cited statute. *See* Doc. 1, at 22; *State of Ohio v. Henson*, No. TRD2303275A (Sylvania Mun. Ct.); Doc. 45-1, at 11 (Plaintiff's admission that he told a Defendant Deputy he would repair and fix the cracked window); Doc. 45-2, at 5 (Baum's statement in discovery responses that the reason for the traffic stop was, *inter alia*, the cracked windshield); Doc. 45-2, at 3 (Baum's admission that when he approached Plaintiff's vehicle he stated, "I noticed you have a cracked windshield"); Doc. 1, at 17 ("This vehicle was observed driving with a cracked front windshield."); Doc. 1, at 16 ("The individual stated that he has plans to fix the window. Charge can be dropped if [he] fixes window.").

Plaintiff presents no evidence disputing the above. Instead, he argues Baum failed to appear for the trial on the traffic citations and the citations were dismissed. (Doc. 48-2, at 1; Doc. 49). But whether there was probable cause for the traffic stop is determined by the facts at the time of the stop, not by later developments. *See Manley v. Paramount's Kings Island*, 299 F. App'x 524, 530 (6th Cir. 2008) (stating "the law is clear: an arrest grounded in probable cause does not become invalid simply because the charges are later dropped or the defendant is acquitted") (quoting *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004)); *see also Bradley v. Reno*, 749 F.3d 553, 556 (6th Cir. 2014) ("An acquittal of course does not refute an earlier finding of probable cause.").

Moreover, although Plaintiff alleges Baum was an "unreliable witness" due to his failure to appear, and he should thus lack credibility in these proceedings, the Court does not resolve questions of credibility on a motion for summary judgment. *See Regents v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014).

For these reasons, because Plaintiff has not established a question of fact regarding whether Baum had probable cause for the traffic stop, the Court finds Defendants entitled to summary judgment on Plaintiff's claim regarding the stop.

*Extension of Traffic Stop*

Next, Defendants contend they are entitled to qualified immunity and summary judgment on Plaintiff's claim that they unconstitutionally prolonged the traffic stop. This is so, they argue, because (1) the traffic stop was not prolonged, and (2) even if it was, the officers had the requisite reasonable suspicion to support doing so. (Doc. 45, at 12-13). Plaintiff does not present any specific opposition to these arguments. *See* Docs. 48, 49.

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

> Generally, a dog sniff does not require separate reasonable suspicion because it is not a search under the Fourth Amendment. If a dog sniff is conducted while someone is otherwise properly seized, such as in a lawful traffic stop, the dog sniff may render an otherwise lawful seizure unlawful only if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop.

*United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012) (internal citation omitted). In *Rodriguez v. United States*, the Supreme Court held officers may not prolong a traffic stop to have a drug dog sniff a car—a crime detecting action not ordinarily incident to a traffic stop—absent independent reasonable suspicion to detain the motorist. 575 U.S. 348, 354-57 (2015). A traffic stop must "last no longer than is necessary to effectuate th[e] purpose" of the stop. *Id.* at

354 (quotation omitted). Legitimate purposes include looking for a valid license and registration, checking for outstanding warrants, and "attend[ing] to related safety concerns." *Id.* at 354–55. While an officer may "conduct certain unrelated checks," he may not do so in a manner that "measurably extend[s] the duration of the stop." *Id.* at 355 (quotation omitted). "Authority for the seizure [ ] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. "The reasonableness of a seizure . . . depends on what the police in fact do." *Id.* at 357. "The critical question . . . is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'—*i.e.,* adds time to— 'the stop.'" *Id.*

In his pleadings, Plaintiff alleges the officers "prolonged" the traffic stop (Doc. 1, at 8) and held him "for approximately 45 minutes" (Doc. 12, at 1).[4] The evidence before the Court at the summary judgment stage on this issue consists of the parties' respective discovery responses. In his responses to Defendants' discovery requests, Plaintiff avers Defendants "held [him] against [his] will without probable cause" and "prolonged the traffic stop." (Doc. 45-1, at 4). In Defendant Baum's discovery responses, he avers Plaintiff "was detained for the time it took to write the traffic citations issued to him and then for the completion of the search of his car after the drug dog detected the odor of a controlled substances from within . . . the car," which was "somewhat less than 45 minutes total." (Doc. 45-2, at 4).

The only factual evidence before the Court regarding the length of the stop is Defendant Baum's sworn discovery response that Plaintiff was detained "for the time it took to write the traffic citations . . . *and then* for the completion of the search of his car *after* the drug dog"

4. The Court merely quotes Plaintiff's allegations for context. The Complaint is not evidence for summary judgment purposes. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 257 (explaining the nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment").

alerted. (Doc. 45-2, at 4) (emphasis added).[5] Based on these facts, Plaintiff was only detained (as to the initial stop) for as long as it took to write the two traffic citations and any further detention was due to the drug dog having already alerted. This Court previously held Plaintiff had not plausibly alleged the search of the car itself violated his rights because the parties agreed the dog alerted to the presence of drugs in the car. *See* Doc. 26, at 12. "A drug dog's alert establishes probable cause for a search." *Id.* (citing *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012) and *Nykoriak v. Wileczek*, 666 F. App'x 441, 445 (6th Cir. 2016)). Thus, although neither party parses how much time was spent on each task – writing the tickets and searching the car post-alert – Plaintiff cannot challenge the search as an event unlawfully prolonging the stop under *Rodriguez*. This leaves only Baum's statement that Plaintiff was detained (on the initial stop, prior to the drug dog alerting) for the time necessary to issue the citations. This is permissible, or at the very least, Plaintiff has not demonstrated it violated clearly established law. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); *Rodriguez*, 575 U.S. at 354 ("Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop."). Thus, the Court finds Plaintiff has not established a question of fact regarding whether Defendants unreasonably prolonged the stop.

Moreover, even if there were a question of fact regarding the stop being prolonged, the Court agrees with Defendants that the evidence demonstrates the officers had independent reasonable suspicion therefor. Again, in his sworn discovery responses, Baum explains officers

5. Plaintiff's statement in his discovery responses that the stop was "prolonged" is a legal conclusion, rather than a factual assertion. *See* Doc. 45-1, at 4.

suspected that at the time he was stopped, Plaintiff "was trying to purchase, or just had purchased, controlled substances." (Doc. 45-2, at 5). As a basis for such suspicion, Baum explains:

> (a) We were aware of a house (unknown address) in the area of the traffic stop where controlled substances were being purchased (one of the reasons why we were in the area that day); (b) [Plaintiff's] driving pattern just before the stop which, in my law enforcement experience, was indicative of drug activity—first, signaling for a turn then continuing driving after seeing my marked cruiser, and second, driving in a circle after my marked cruiser was behind them; (c) that same day[,] another motorist was stopped in that area . . . driving in a similar strange manner; and (d) a search of [the other driver's] car revealed controlled substances.

*Id.*

"Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Shank,* 543 F.3d 309, 313 (6th Cir. 2008) (citation modified). "If the officer has a reasonable and articulable suspicion of criminal activity, he may extend a traffic stop long enough to confirm or dispel his suspicions." *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2012). When evaluating whether a crime is afoot, law enforcement officers may draw upon their training and experience "to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United Shank*, 543 F.3d at 315 (internal quotation omitted). Here, the facts Baum attests to provided the Officers with reasonable suspicion that Plaintiff may have been engaged in drug-related criminal activity. Thus, even if the traffic stop was prolonged for purposes of the dog sniff itself, that action was supported by independent reasonable suspicion, and Plaintiff's rights were not violated.

Thus, the Court finds Defendants have established entitlement to summary judgment on Plaintiff's claim that the traffic stop was unconstitutionally prolonged.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 45) be, and the same hereby is, GRANTED; and it is

FURTHER CERTIFIED that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: October 30, 2026